UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-21488 CIV-HUCK/O'SULLIVAN

JOSE ERNESTO MARTINEZ, individually
and on behalf of all others similarly situated
and the general public,

    Plaintiff,

vs.

PUBLIC STORAGE, a Maryland corporation,

    Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PUBLIC STORAGE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Brian Ku, Esq.
Louis Mussman, Esq.
KU & MUSSMAN, P.A.
Attorneys for Plaintiff
Jose Ernesto Martinez
11098 Biscayne Blvd., Ste. 301
Miami, FL 33161
(305) 891-1322

**Date Served:  September 21, 2009**

I. **<u>INTRODUCTION</u>**

The only issue raised by Defendant Public Storage's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) ("Motion") is whether Plaintiff Jose Martinez's ("Plaintiff") First Amended Complaint ("FAC") demonstrates he has standing under the Americans With Disabilities Act ("ADA").  It does. Defendant's Motion—while wrought with insults and lengthy recitations of basic constitutional concepts—ignores the obvious, attempting instead to defeat class certification in advance by denying all class discovery and insisting that Plaintiff establish the requirements for certification in the FAC.  This type of topsy-turvy maneuver has been squarely rejected by other courts.  As such, Defendant's Motion should be denied.

The ADA provides a "broad mandate" to eliminate discrimination against people with disabilities.  *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). The Supreme Court has instructed that a broad view should be taken of Article III standing in civil rights cases, especially where, as in the context of the ADA, private rights of action are the primary method of obtaining compliance with the Act.  *See Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209 (1972).  Nevertheless, Defendant urges this Court to construe the standing requirement in ADA cases so narrowly, that even a plaintiff who personally encountered numerous instances of intentional discrimination by a single defendant at multiple facilities lacks standing.  Indeed, under Defendant's theory of standing, Public Storage could enforce a "Whites only" policy, and then argue that an African-American plaintiff who had been denied access to only one facility could not prevent the company from enforcing its "Whites only" policy in its 61 remaining stores in the state. Further, Defendant's suggestion that Plaintiff is required to visit each and every facility in Florida in order to have standing is entirely inconsistent with the futile gesture clause of Title III.

This case is about easily identifiable barriers to access for wheelchair-bound and mobility impaired individuals at Defendant's facilities throughout the state of Florida. One of the primary purposes of the ADA is to provide individuals with the legal power

1

needed to prevent businesses such as Public Storage from discriminating against the disabled. Plaintiff more than adequately pleads facts that establish basic Article III standing to bring the claims alleged in the FAC: injury-in-fact, causation, and redressability. Accordingly, the Defendant's Motion must be denied.

## II.   STATEMENT OF FACTS

Plaintiff's FAC alleges common, discriminatory architectural design features recurring in Defendant's Florida facilities and Defendant's discriminatory practices and procedures toward wheelchair or electric scooter bound individuals, [1] which effectively deny such individuals full and equal access to the goods and services Public Storage offers.

Public Storage is a publicly traded company in the business of renting storage space to its customers. Unlike many national companies, Public Storage does not franchise; it owns all of its facilities. (FAC, ¶ 18). As an owner rather than franchiser, Public Storage exercises substantial control over the development, alteration, remodeling, maintenance and operation of its facilities nationwide. *Id*.

Plaintiff, a tireless advocate who has dedicated his life's work to helping other disabled individuals become more independent and self-reliant, suffers from cerebral palsy, which causes him to be confined to a wheelchair. (FAC, ¶ 8(a)(b)). In late 2006, Plaintiff was arranging for his wife to permanently move to the U.S. and needed a self-storage unit larger than the one he was currently renting from Safeguard Storage, so he visited the Public Storage facility located at 10821 NW 14th St., Miami, FL 33712. (FAC, ¶¶ 25-26). Plaintiff selected this specific location because it offers outdoor units, and he was seeking the convenience of a drive-up facility. (FAC, ¶ 25). After personally encountering barriers to access at the aforementioned facility, Plaintiff tried seven other

---

[1] Discovery has confirmed both a common architectural design *and* a companywide policy of discrimination. These are issues for class certification – *not* standing. Defendant is asking this Court to prematurely decide issues more properly decided at the class certification stage, *prior* to class discovery.

2

Public Storage locations offering outdoor, drive-up units. (FAC, ¶ 27). At each of the these locations, Plaintiff either encountered and/or had actual knowledge of numerous discriminatory design features preventing wheelchair-bound individuals from accessing the facility. (FAC, ¶ 29-37).

The FAC alleges violations of Title III of the ADA, and specifically alleges that the following barriers block access for Plaintiff and members of the class: (1) the storage units themselves are inaccessible due to a lip at the entrance of the drive-up units (FAC, ¶ 29(a)); (2) the storage units are inaccessible because the storage unit doors do not have the proper hardware, require the use of a rope that is too high for a wheelchair bound individual to grab in order to open and close, and the doors are roll-up metal curtains that persons confined to a wheelchair cannot raise high enough to open (FAC, ¶ 29(b)); (3) the storage units are inaccessible due to a lack of level landings outside of the storage units. (FAC, ¶ 29(c)). These violations are the net result of a common architectural design. (FAC, ¶ 17). In fact, in its Motion, Defendant actually acknowledged that the lips and slopes incorporated into its self-storage units are common design features utilized to prevent water intrusion. (Motion, 4, 18-19) (wrote Defendant, "[a]t each facility, Plaintiff allegedly saw similar barriers: uneven slope [sic] on walkways, evidently for drainage" and "Plaintiff…encountered…a small "lip" [and] a dip in the alleyway, presumably for rain drainage.").

Plaintiff further alleges the parking is inaccessible, the route from the parking to the entrance is inaccessible due to slopes, the service counters are inaccessible due to their height, the entrances to the secure storage area are inaccessible due to their height, the ramps are inaccessible due to slopes, there is inaccessible signage throughout the facilities, and the restrooms are inaccessible. The alleged violations are common throughout Defendant's facilities in Florida, as a result of a common architectural design. (FAC, ¶¶ 17, 37).

In addition to alleging a common architectural design, Plaintiff alleges that Public

3

Storage has corporate-wide policies and procedures that constitute discrimination under the ADA. (FAC ¶ 22).

Plaintiff still desires to utilize the goods and services provided at Defendant's Florida facilities, but he is currently deterred from doing so because the barriers to access still exist. (FAC, ¶ 28).

### III. LEGAL STANDARD ON A MOTION TO DISMISS UNDER RULE 12(B)(1)

The Plaintiff bears the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). However, "[i]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997) (citing *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir. 1986)). Indeed, an action may be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction only "when [a] district court lacks the statutory constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Furthermore, in determining a motion made pursuant to Fed. R. Civ. P. 12(b)(1), a court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Eland v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

In its Motion, Defendant purports to raise a *factual*, rather than facial, challenge to jurisdiction. However, this characterization is entirely improper, and can only be viewed as an attempt to confuse or distract this court. In a Rule 12(b)(1) facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). By contrast, in a Rule 12(b)(1) *factual* attack, the challenger "controvert[s] the *accuracy* (rather than sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer[s] materials of evidentiary quality in support of that position."

*Valentin v. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001); *see also Morrison*, 323 F.3d at 924 n.5.  In essence, a proper factual attack is intended to allow the court to weigh and decide factual *disputes* between the parties.  *See Valentin*, 254 F.3d at 363 (citing *Garcia*, 104 F.3d at 1261).  In its Motion, however, Defendant does not actually use the extrinsic evidence to attack any of the allegations in the FAC as untrue.  Much to the contrary, Defendant presumes that the allegations in the FAC are true, and simply argues that they are insufficient to establish standing.  As the court in *Gould Electronics Inc. v. U.S.* explains, "[i]f the defendant raises no challenge to the facts alleged in the pleadings, the court may rule on the [Rule 12(b)(1)] motion by accepting the allegations as true."  *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 177 (3d Cir. 2000).  Accordingly, the Defendant's motion must be characterized as a Rule 12(b)(1) facial attack, and the court should assume the allegations in the FAC are true when determining whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.  *See Morrison*, 323 F.3d at 924 n.5.

**IV. DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS ESTABLISHED ALL NECESSARY REQUIREMENTS FOR ARTICLE III STANDING**

There are three well-settled constitutional standing requirements: (1) injury-in-fact, which must be (i) concrete and particularized, and (ii) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) the injury must be likely to be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Defendant does not dispute the FAC sufficiently alleges Public Storage's noncompliance with Title III caused Plaintiff's injury, and an injunction requiring Public Storage to comply with the ADA would redress the harm.  Thus, the only relevant issue raised is whether Plaintiff has alleged, (a) a "concrete and particularized" injury and (b) an "actual or imminent" injury to satisfy the injury-in-fact requirement.

5

### A. Plaintiff's Allegations That He Personally Encountered Barriers At Defendant's Facilities Demonstrate a "Concrete and Particularized" Injury

In order to satisfy the "concrete and particularized" prong of the injury-in-fact requirement, "the injury must affect the plaintiff in a personal and individual way." *Defenders of Wildlife*, 504 U.S. at 560 n.1. In the context of an ADA claim, awareness of discriminatory conditions, and the avoidance of a public accommodation because of that awareness, establishes injury in fact. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002) ("[O]nce a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury."). Furthermore, the plaintiff's injury continues beyond the initial encounter with discrimination: "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Pickern* at 1133.

Plaintiff's disability causes him to be confined to a wheelchair. (FAC, ¶ 8(a)). In attempting to utilize Public Storage's facilities, Plaintiff has personally encountered numerous barriers preventing wheelchair-bound individuals from accessing the desired storage units. (FAC, ¶¶ 26,27). The barriers are not limited to one or a few locations, but are common throughout Defendant's Florida facilities. (FAC, ¶ 17). Plaintiff is directly affected by these common, discriminatory design features at Public Storage locations, as he is unjustly denied access to the goods and services Defendant provides. (FAC, ¶¶ 27, 28). Plaintiff alleges he intends to return to Public Storage's facilities to rent the "most accessible unit," but he "continues to experience serious difficulty due to the barriers" which block his access. (FAC, ¶ 28). Accordingly, Plaintiff's allegations are sufficient to establish the type of particularized and concrete injury necessary to establish Constitutional standing. *See Disabled in Action*, 2003 WL 1751785, at *7 (holding that the disabled plaintiffs, one of whom was wheelchair-bound and the other who required

6

the use of a motorized scooter, suffered "concrete and particularized" injuries due to their inability to use the non-compliant wheelchair lifts at defendant's facility independently); *see also Steger v. Franco, Inc.*, 228 F.3d 889, 893-94 (8th Cir. 2000) (holding that the concrete and particularized prong of the injury-in-fact requirement was satisfied where a blind plaintiff, who only attempted to enter defendant's building once, was prevented from accessing the facility due to non-compliant signage).

### B. Plaintiff's Injury Is Both "Actual" And "Imminent" As He Has Alleged A Desire To Return To Public Storage's Facilities But Is Currently Deterred By Numerous Accessibility Barriers

When seeking injunctive relief, in order to establish legal injury the plaintiff must demonstrate a sufficient likelihood he will again be wronged in a similar way. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). For ADA claims, however, "[a]llegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Castenda v. Burger King Corp.*, 597 F.Supp.2d 1035, 1041 (N.D. Cal. 2009) (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008)); *see also Small v. General Nutrition Companies, Inc.*, 388 F.Supp.2d 83, 88 (E.D.N.Y. 2005).

Indeed, Courts considering ADA claims have found that disabled plaintiffs who encountered barriers at public accommodations prior to filing their complaints have standing to bring claims for injunctive relief as long as "they show a plausible intention or desire to return to the place but for the barriers to access." *Small*, 388 F.Supp.2d at 88 (citing *Disabled in Action of Metro, N.Y. v. Trump Int'l Hotel & Tower*, 2003 WL 1751785, at *7 (S.D.N.Y. 2003)); *see also Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1364 (S.D. Fla. 2001) (plaintiff who testified that he would return to stadium, particularly if the alleged barriers were removed, had standing); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) (plaintiff had

7

standing who encountered barriers at a grocery store and who stated that he would shop there again if it were accessible); *Access 123 v. Markey's Lobster Pool, Inc.*, 2001 WL 920051, at *3 (D.N.H. 2001) (plaintiff had standing when he was aware of barriers in accessing restaurant from parking lot, barriers had not been removed when complaint was filed, and he stated "he would return to [the restaurant] if the barriers were removed"); *Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I*, 1997 WL 33471623, at *6 (D. Colo. 1997) (plaintiff has standing if he shows that "discrimination on the basis of disability has deprived him of the ability to gain access to public accommodations and that a failure to redress the injury will continue to deprive him of access to those facilities in the future"). "A plaintiff however need not confront each barrier or instance of discrimination in order to demonstrate his standing to sue so long as he has actual knowledge of the violation. *Fox v. Jupiter*, 2007 WL 2819522, *6 (S.D. Fla. 2007) (citing *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357 (S.D. Fla. 2001)). The court, in holding that a visual inspection could constitute "actual knowledge", stated that "the ADA cannot be read to require a plaintiff to subject himself to repeated discrimination by attempting to cross the threshold of each individual store." *Id*. *See also* 42 U.S.C. 12188(a)(1). The FAC states Plaintiff is disabled and encountered barriers to access at Public Storage, and thus he has standing to bring this action.

### 1. Plaintiff Has Standing As To The Eight Locations Named In The FAC, Because He Has A Specific Rationale For Selecting Those Locations And Clear Plans To Return

In evaluating an ADA plaintiff's claim that he intends to return to a facility, courts have been guided by four factors: "(1) the proximity of the place of public accommodation to plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definitiveness of the plaintiff's plan to return, and (4) the plaintiff's frequency of travel near defendant. *See Fox v. Morris Jupiter Assocs.*, 2007 WL

8

2819522, at *4 (S.D. Fla. 2007) (quoting *Hubbard v. Rite Aid Corp.*, 433 F.Supp.2d 1150, 1162-63 (S.D. Cal. 2006)).

Plaintiff resides and works in Miami-Dade County and visited eight Public Storage facilities also located in Miami-Dade County. More specifically, Plaintiff either resides or works between 3 miles from the closest facility and 14 miles from the farthest one. (FAC, ¶ 27(a-g)). However, relying on cases where the plaintiff lived hundreds of miles or several hours from the subject locations, Defendant repeatedly argues that, given the distance between Plaintiff's residence and the Public Storage facilities mentioned in the Complaint, it is implausible that Plaintiff will return to these facilities. (Motion, 7-9). However, the plaintiff in *Lamb v. Charlotte County*, 429 F.Supp.2d at 1302,1310 (M.D.Fla.2006), cited by Defendant, resided 75 miles from the defendant's property and had no connection to the property; the plaintiff in *Rosenkrantz v. Markopoulos*, 254 F.Supp.2d 1250,1253 (M.D.Fla.2003), cited by Defendant, resided hundreds of miles from the defendant's property; the plaintiff in *Brother v. Tiger Partner, LLC,* 331 F.Supp.2d 1368,1374 (M.D.Fla.2004), cited by Defendant, resided 280 miles from the defendant's property; the plaintiff in *Access 4 All v. Oak Spring, Inc.,* 2005 WL 1212663 (M.D.Fla. 2005), cited by Defendant, where plaintiff lived four hours drive from the defendant's property. Clearly, these proximity arguments should not apply to a Plaintiff who resides between 3 and 14 miles from the subject Properties.

The instant facts, where Plaintiff lives and works within a reasonable proximity of each of the facilities, is more similar to *Fox*, 2007 WL 2819522, at *4 (holding that, although Plaintiff resided approximately 25 miles from Defendant's electronics boutique, "the proximity of Plaintiff's family and Plaintiff's place of employment to the property make Plaintiff's stated desire to return credible") and *Park v. Ralph's Grocery Company*, 254 F.R.D. 112, 116-17, 119 (C.D. Cal. 2008) (holding that, for purposes of constitutional standing, disabled plaintiff alleging violations of the ADA lived within

9

"reasonable proximity" of defendant's inaccessible grocery stores which ranged from 15-30 miles away from plaintiff's residence).

Defendant also fails to note that Plaintiff sought a facility offering "a larger unit that offered the convenience of drive-up access." (FAC, ¶ 25). Defendant's list of "closer" facilities does not include units with full drive up access and should be disregarded.[2] Plaintiff insists on drive up access because he is severely disabled and values his privacy. Additionally, Plaintiff intends to store a vehicle at the subject Property during long trips out of the country, which requires the facility be one with drive up access.

Unlike the cases cited by Defendant, Plaintiff alleges a continuing desire to utilize Defendant's facilities, as well as definitive plans to visit these facilities in the near future both "to store his vehicle in an outdoor Public Storage unit" and "to move various items currently located at his apartment to the storage facility." (FAC, ¶ 28). These allegations are more than adequate to establish Article III standing.

Defendant's misguided reliance on this Court's holding in *Small v. General Nutrition Companies* for the assertion that Plaintiff's intent to return to Defendant's storage facilities is not plausible also fails. In *Small*, the plaintiff did *not* claim he actually attempted to enter *any* of the stores allegedly violating the ADA. *See Small*, 388 F.Supp.2d at 88. Rather, plaintiff argued it was a "reasonable inference" that he had observed the architectural barriers to entry at the stores violating the ADA because he regularly traveled in their "immediate vicinity." *Id.* Furthermore, the plaintiff in *Small* argued it was a "reasonable inference" that he would have purchased goods from the GNC stores listed in the complaint but for the architectural barriers to entry and that he would continue to shop at GNC stores without architectural barriers on a regular basis.

---

[2] Defendant makes no argument that those facilities closer to Plaintiff's residence offer drive-up access. Plaintiff pleaded the reasons for selecting the eight facilities in question; Defendant's charges of "cherry-picking" for litigation purposes are baseless.

10

*Id.* Accordingly, this Court granted standing only as to the GNC in plaintiff's "immediate neighborhood," because the complaint only warranted an inference that plaintiff had actual knowledge of the entrance barriers at that facility, and not the ten others mentioned in the complaint. *Id.* at 88-89.

Here, Plaintiff is not asking the Court to infer that he knew of the barriers to access at Public Storage's facilities or that he would again visit such facilities in the imminent future. Much to the contrary, Plaintiff has personally encountered barriers to access at eight Public Storage locations throughout Florida. (FAC, ¶¶ 26-27) Plaintiff also has a specific reason to return to the facilities listed in paragraph 27 of the complaint, namely that he seeks "a larger unit that also offer[s] the convenience of drive-up access." (FAC, ¶ 25). Plaintiff also alleges he "will travel to the locations mentioned in the Complaint with the intent of renting the most accessible unit." (FAC, ¶ 28). Unlike the plaintiff in *Small*, who only visited one GNC location, did not recall any barriers to access at that location, and did not express a desire to return, Plaintiff here has alleged "something more than a general desire to patronize" Defendant's facilities. *See Small*, 388 F.Supp.2d at 89.

Plaintiff lives in reasonable proximity to Public Storage's inaccessible facilities, has visited and attempted to patronize eight Public Storage facilities in the past, has been deterred from renting a storage unit due to barriers to access and alleged definite plans to return. (FAC, ¶ 27,28). Accordingly, Plaintiff has established Article III standing for his case.

### 2. Plaintiff Has Standing To Challenge The Discriminatory Design Features Common To All Of Defendant's Florida Facilities

Defendant's contention that Plaintiff lacks standing as to non-visited facilities and is premature and is simply "a maneuver to defeat class certification in advance by denying all class discovery and insisting that plaintiff prove up his Rule 23 motion within

11

the four corners of the [complaint]." *Castenda v. Burger King Corp.*, 597 F.Supp.2d 1035, 1049 (N.D. Cal 2009) (ADA case rejecting Defendant's standing argument as a premature certification argument). This "topsy-turvy" maneuver has been squarely rejected as improper at this stage in the pleadings. *See id.* ("[P]laintiff deserves a fair opportunity to examine the files of defendant to find the common architectural plans and other common-source documents that would be useful at the Rule 23 stage.").[3]

Relying on the false premise that when bringing suit under the ADA for barriers to access the plaintiff must allege that he intends to return to every facility mentioned in the complaint, Defendant claims Plaintiff's standing should be limited to the Public Storage facility closest to his home. This is simply not the law. For instance, in *Park v. Ralph's Grocery Company*, the defendant cited *Small v. GNC* for the proposition that "the named plaintiffs [in an ADA barrier case] must show that they have individual standing with respect to each store at issue." *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 118-19 (C.D. Cal. 2008). The *Park* court emphatically rejected the defendant's argument, holding that the plaintiffs had standing even as to non-visited stores and stating that its conclusion is "*adequately supported by relevant case law*." *Id*. at 119 n.1 (emphasis in original). As such, the *Park* holding and similar precedent clearly demonstrate that ADA plaintiffs are not, in fact, required to show an intent to visit each and every facility at issue in a complaint. *See Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1080-81 (D. Haw. 2000) ("This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice…. Plaintiff should not be required to encounter every barrier seriatim… to obtain effective relief."); *Celano v. Marriott*, 2008 WL 239306, at *7 (N.D. Cal. 2008) ("The court concludes that all three plaintiffs have

---

[3] Ironically, early discovery establishes both a common architectural design as well as a discriminatory corporate policy. Defendant's Motion to Dismiss is a desperate attempt to prevent the Court from reviewing those documents at the class certification stage.

standing to bring their ADA claim as to all twenty-six of Marriot's courses nationwide … [i]t is unnecessary that plaintiffs actually visit each of the golf courses to have been deterred from playing there."); *Steger v. Franco, Inc.*, 228 F.3d 889, 893-94 (8th Cir. 2000) (rejecting defendant's argument that the blind plaintiff could challenge the ADA violation only as to the restroom the had attempted to access, stating that such a "narrow construction" of the ADA would be "not only… inefficient, but impractical").

Defendant's reliance on *Small v. GNC* and *Clark v. Burger King* is entirely improper in the present matter. Indeed, unlike the plaintiffs in *Small* and *Clark*, here Plaintiff has alleged a common, discriminatory design feature among Public Storage's facilities which arise from a limited number of architectural design prototypes. (FAC, ¶¶ 17, 37). The court in *Clark* actually addressed this type of allegation, reasoning that "[a]s to places Clark ha[d] yet to visit, absent any allegation that there exist[ed] (1) particular commonality of construction, or (2) that BKC implement[ed] a corporate policy violative of the ADA at Burger King restaurants, Clark clearly lack[ed] standing." *Clark v. Burger King*, 255 F.Supp.2d 334, 343-44 (D.N.J. 2003) (emphasis added). The Court simply found that the plaintiff had failed to plead such commonality and, thus, the plaintiff's standing was limited to stores actually visited. The decision cautioned, however, that"[i]f, on the other hand, there existed an allegation that all Burger King restaurants are similar, in that they possess *commonality of architecture*, or that they implement a *corporate policy violative of the ADA*, Clark may have standing as to restaurants he has yet to visit." *Id.* at 343 n.11 (emphasis added). Thus, the *Clark* court's statement that "architectural barrier removal actions under the ADA are site specific," *see id.* at 343 n.10, can only apply to situations like *Clark* where the plaintiff has not alleged common, discriminatory design features. *See also Castenda*, 597 F.Supp.2d at 1041 ("Article III standing for ADA claims is not inherently site specific.").

In a case such as this, where the FAC alleges a common architectural design among Defendant's facilities which violates the ADA, *and* a common corporate policy of

13

discrimination, (FAC, ¶ 17,37). Plaintiff should have standing to pursue class-wide relief as to all of Defendant's Florida facilities. In essence, the access barriers purposefully implemented at Defendant's facilities constitute the factual underpinnings of a single legal injury, namely the failure to remove architectural barriers in violation of the ADA. As such, judicial economy is served by avoiding the piecemeal litigation that would result if Plaintiff was permitted to sue only one or a few Public Storage facilities at a time, repeating the process over and over again, filing the same lawsuit until all the Florida facilities were in compliance.

Furthermore, requiring the plaintiff to visit each and every facility named in the complaint is entirely inconsistent with the futile gesture clause of Title III. *See* 42 U.S.C. § 12188(a)(1) (Title III of the ADA mandates that it is unnecessary for "a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization … does not intend to comply with [the ADA]"). Plaintiff has actually visited multiple Public Storage facilities in various parts of Florida, and has encountered the same discriminatory design features at each location. As such, requiring Plaintiff to undertake a state-wide inspection of each and every Public Storage only to encounter the same discriminatory architectural design over and over again, would be not only futile, it would also be unreasonably burdensome and unnecessarily frustrating.

Contrary to Defendant's assertions, "the specific injury under the ADA is not a specific barrier at a specific site but instead the discriminatory policy or design or decision." *See Castenda*, 597 F.Supp.2d at 1043. In this case, the discriminatory design features encountered in Defendant's facilities stem from "one of a limited number of architectural design prototypes developed and/or implemented by Public Storage." (FAC, ¶ 17). These design features are not limited to one or even a few Public Storage locations, but, rather, they recur in all Defendant's facilities throughout Florida. (FAC, ¶ 17,37). Furthermore, as the owner, rather than franchiser, of all the aforementioned Florida facilities, Defendant will inevitably be required to ensure that such facilities are

14

remodeled so as to comply with the ADA. (FAC, ¶ 18). Plaintiff further alleges a corporate policy amounting to discrimination under the ADA. (FAC, ¶ 22). Accordingly, because Defendant's "offending policy [and] design gave rise to more than one violation, … the reversing policy should eliminate more than one barrier," and Plaintiff should be granted standing to challenge each Public Storage facility in Florida as violative of the ADA. *See Castenda*, 597 F.Supp.2d at 1043.

### C. Plaintiff, Having Personally Suffered The Injuries Alleged In The FAC, Has Standing To Assert Claims On Behalf Of The Class Of Wheelchair and Motorized Scooter Bound Individuals

Defendant seemingly asserts that the scope of Plaintiff's standing in this matter is limited by the Constitution. (Motion, 7). However, in the FAC, Plaintiff has more than adequately demonstrated that "he is within the class of persons who will be concretely affected" by Public Storage's continued violation of the ADA. *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982). Indeed, Plaintiff, an individual afflicted with cerebral palsy which causes him to be confined to a wheelchair, is only challenging the discriminatory design features at Defendant's facilities which create barriers to access for similarly disabled individuals who require the use of a wheelchair or electric scooter. (FAC, ¶ 8(a), 11). Accordingly, Defendant's two-page list of cases regarding the scope of constitutional standing is nothing more than a meaningless side show, bearing no relevance whatsoever to the present matter. Plaintiff seeks to represent a class of wheelchair-bound individuals with the goal of redressing barriers encountered by those individuals. In contrast to the cases Defendant cites, Plaintiff does *not* seek to address barriers encountered by an individual with a different disability (e.g., a person who is vision impaired or hearing impaired).

Also, with respect to the scope of ADA injury in the context of class standing, "most district courts to have considered the issue find that a plaintiff may challenge discrimination on behalf of a class where the discrimination arises from a common policy

or practice, or a common architectural design, at multiple commonly owned or affiliated businesses." *Castenda*, 597 F.Supp.2d at 1042 (N.D. Cal. 2009). In the FAC, plaintiff specifically alleges that "discriminatory design features encountered by Plaintiff… recur in Public Storage's facilities" and "[i]n addition to common architectural defects, Public Storage also has discriminatory practices and/or procedures toward wheelchair or electric scooter bound individuals which have the effect of denying those individuals full and equal access to, the goods and services of Public Storage, and have been frustrating and injurious to those individuals' dignity." (FAC, ¶¶ 17, 22). Accordingly, Plaintiff is not trying to create standing as to non-visited Public Storage facilities merely by making class allegations, as Defendant seems to contend. Rather, Plaintiff personally suffered the injury that gave rise to each of the claims alleged in the current matter, and now is properly asserting claims on behalf of similarly disabled individuals.

Thus, the allegations in the FAC are sufficient to demonstrate both that Plaintiff himself has standing, and that he has standing to pursue claims on behalf of other wheelchair and/or electric scooter bound individuals.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests the Court deny Public Storage's Motion in its entirety. In the alternative, Plaintiff requests leave to amend.

DATED: September 21, 2009

Respectfully submitted,

**ATTORNEYS FOR PLAINTIFF**

By:  /s/ Brian Ku

Brian Ku
Louis Mussman
KU & MUSSMAN, P.A.
11098 Biscayne Blvd., Ste. 301
Miami, FL 33161
(305) 891-1322
*brian@kumussman.com*

16

>Allan Kanner
>Conlee Whiteley
>M. Ryan Casey
>KANNER & WHITELEY, LLC
>701 Camp Street
>New Orleans, LA 70130
>(504)524-5777
>*c.whiteley@kanner-law.com*
>
>Wayne S. Kreger, Esq.
>Gillian L. Wade, Esq.
>MILSTEIN, ADELMAN & KREGER, LLP
>2800 Donald Douglas Loop North
>Santa Monica California 90405
>(310) 396-9600
>*wkreger@maklawyers.com*

## CERTIFICATE OF SERVICE

I certify that the foregoing was delivered to each counsel of record through the Court's ECF service on September 21, 2009.

>By: /s/ Brian Ku
>
>Brian Ku, Esq.